UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SONIC MOMENTUM B, LP d/b/a
MOMENTUM BMW,

       Plaintiff,

vs.                                      CASE NO.:

MOTORCARS OF DISTINCTION, INC.,
MOTORCARS OF DISTINCTION
MAINTENANCE, INC., d/b/a Motorcars of
Distinction, PIERO NAVARRO, a/k/a Peter
Louis Navarro, MADELYN, INC., d/b/a
UNITED AMERICAN LIEN & RECOVERY,
GUSTAN CHO, and ROBERT A. COPE,

       Defendants.

IN RE: 2003 Ferrari 360 Spider F1, VIN:
ZFFYT53A030131429

_____/

## COMPLAINT

    Sonic Momentum B, LP d/b/a Momentum BMW ("Momentum BMW"), by and through

its undersigned counsel herby sues Defendants Motorcars of Distinction, Inc., Motorcars of

Distinction Maintenance, Inc., d/b/a Motorcars of Distinction, Piero Navarro a/k/a Peter Louis

Navarro ("Navarro"), Madelyn, Inc. d/b/a United American Lien & Recovery ("Madelyn"), and

Gustan Cho ("Cho"), and Robert A. Cope ("Cope") and states:

### JURISDICTION AND VENUE

    1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) as the amount in

controversy, the retail value of the vehicle in question and the damages sought, exclusive of

interest and costs, exceed the sum of $75,000.00, and there is complete diversity.

2.      This action is in part an action for declaratory relief pursuant to 28 U.S.C. § 2201, and Chapter 86, Florida Statutes for the purpose of determining the Parties rights in and title to, a 2003 Ferrari 360 Spider F1, bearing Vehicle Identification Number ZFFYT53A030131429 (the "Vehicle").   At the time of filing the instant action, the Vehicle had a market value of $105,139.00.  See AutoTrader search dated 5-19-2011 attached as "*Exhibit A*".

3.      This action is also in part based upon a federal question, the violation of the Federal Odometer Act, 49 U.S.C. § 32701 *et. seq*.  This Court therefore has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and 49 U.S.C. 32710(b).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) insofar as one or more of the Defendants reside or are domiciled in this judicial district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

5.      Plaintiff is a Texas limited partnership that operates a dealership in Houston, Texas, and engages in the sale of new and used motor vehicles.

6.      Defendant Navarro is an individual believed to reside in the Southern District of Florida.

7.      Defendants Motorcars of Distinction, Inc., and Motorcars of Distinction Maintenance, Inc., are Florida corporations and upon information and belief, are alter egos of each other insofar as, among other reasons, both: (i) do business in the same principal pace of business in the Southern District, (ii) are owned and operated by Defendant Navarro, and (iii) Defendant Navarro is their sole officer and director, who treats them interchangeably when dealing with the public. Accordingly Defendants Motorcars of Distinction, Inc., and Motorcars of Distinction Maintenance, Inc., are hereafter referred to collectively as "Defendant Motorcars".

Upon information and belief, Defendant Motorcars repairs used exotic motor vehicles, with a focus on used Ferraris.

8. Defendant Madelyn is a Florida corporation with its principal place of business in Ft. Lauderdale, Florida, which upon information and belief provides legal services to individuals and entities desiring to foreclose on their mechanic's liens.

9. Upon information and belief, Defendant Cho is an individual residing in Illinois. This Court has personal jurisdiction over Defendant Cho based upon Defendant Cho's substantial minimum contacts with Florida as a result of his dealings with Defendants Motorcars and Navarro in Florida, and his conduct with respect to the Vehicle in Florida.

10. Upon information and belief, Robert A. Cope is an individual residing in the Southern District of Florida.

## GENERAL ALLEGATIONS

11. Upon information and belief, Ferrari North America issued the original Certificate of Origin for the Vehicle on or about February 13, 2003 (the "CO"), and the CO was first presented in the State of New Jersey for issuance of the initial title to the Vehicle (the "New Jersey Title") by or on behalf of the Vehicle's initial owner.

12. Upon information and belief, in or about October 2007, Defendant Gustan Cho purchased the Vehicle.

13. On November 16, 2007, Defendant Cho is believed to have surrendered the New Jersey Title to the State of Illinois, whereupon the State of Illinois issued title to the Vehicle (the "Illinois Title"). The Illinois Title was reissued in the State of Illinois on or about May 12, 2008, and May 4, 2009. On each ocasion that the State of Illinois re-issued the Illinois Title, the Vehicle was believed to have been owned by Defendant Gustan Cho.

14.     Florida law provides that a mechanic's lien is a possessory lien, meaning that its existence and validity as against third-party purchasers depends upon the mechanic retaining possession of the vehicle in order to enforce the lien.  *See* Fla. Stat. § 713.74; *see also Aviation Investments, Inc. v. Cameron*, 350 F.2d 959, 962 (5th Cir. 1965).

15.     Upon information and belief, at some point in 2009, Defendant Cho tendered possession of (but not the Illinois Title to) the Vehicle to Defendants Piero Navarro and Motorcars in the Southern District of Florida.  Upon information and belief thereafter either:

(a)     (i)     Defendant Cho negotiated with Defendants Navarro and Motorcars to sell the Vehicle through Defendant Motorcars, but were unable to agree on terms, prompting Defendant Cho to lawfully regain possession of the Vehicle from Defendants Navarro and Motorcars.  Defendant Cho then transported the Vehicle back to Illinois.

(ii)     After Defendant Gustan Cho regained possession of the Vehicle from Defendants Navarro and Motorcars.  Defendant Navarro, through his company, Defendant Motorcars, then created a false invoice for repairs that were never made to the Vehicle.  In addition, Defendants unlawfully charged Defendant Cho for storage at $100 per day, even though such charges were never disclosed in a written estimate to Defendant Cho as required by Florida Statute section 559.905.  Defendant Navarro's intention was to create the false appearance that his company, Defendant Motorcars, held a mechanic's lien on the Vehicle.

(iii)     Defendants Navarro and Motorcars then contacted Defendant Madelyn claiming that Defendant Motorcars held a mechanic's lien on the

Vehicle.  Defendants Navarro and Motorcars contracted with Defendant Madelyn to provide legal assistance in preparing the paperwork relating to foreclosure of the mechanic's lien.  In reality, the mechanic's lien was a legal and factual fiction, not only because Defendant Motorcars' invoice was falsified, but also because Defendants Navarro and Motorcars did not have possession of the Vehicle at the time they asserted the existence of, and purported to foreclose on, the mechanic's lien.

(b)      In the alternative,

(i)      Defendant Navarro and/or his company, Defendant Motorcars, made certain repairs to the Vehicle, printed an invoice for the repairs, and then later added unlawful charges for storage of the Vehicle at $100 per day in violation of Florida statute section 559.905.

(ii)      However, because Defendants Navarro and Motorcars failed to satisfy Florida's Motor Vehicle Repair Act (Chapter 559, Part IX, Florida Statutes), and its requirement under section 559.905, that a written estimate for the proposed repairs and the rate for storage be issued to Defendant Cho and approved by Defendant Cho before work commenced, and because Defendant Cho did not waive the written estimate requirement in writing pursuant to section 559.905(3), Defendant Cho was not obligated to pay for the repairs performed by Defendant Navarro and/or his company, Defendant Motorcars.

(iii)      By virtue of the above referenced violations of the Florida Motor Vehicle Repair Act, Defendants Motorcars and Navarro were unable to

collect for the repairs performed, and Defendant Cho lawfully regained possession of his Vehicle and transported the Vehicle back to Illinois.

(iv)    After Defendant Cho regained possession of the Vehicle, Defendants Navarro and Motorcars then contacted Defendant Madelyn claiming that Defendant Motorcars held a mechanic's lien on the Vehicle. Defendants Navarro and Motorcars then contracted with Defendant Madelyn to provide legal assistance in preparing the paperwork relating to foreclosure of the mechanic's lien.  In reality, the mechanic's lien was a legal and factual fiction because Defendants Navarro and Motorcars did not have possession of the Vehicle at the time they asserted the existence of and foreclosed on the mechanic's lien, and because Defendant Motorcars had failed to adhere to Florida's Motor Vehicle Repair Act.

(c)    In the alternative,

(i)    Defendant Motorcars furnished Defendant Cho with the written estimate required by Florida Statute section 559.905, and Defendant Cho approved it.  Defendant Motorcars then made certain repairs to the Vehicle, and issued an invoice to Defendant Cho for the repairs, charging Cho no more than was authorized in the estimate and permitted by Florida Statute section 559.906.

(ii)    Defendant Cho refused to pay the invoice, and unlawfully regained possession of the Vehicle from the premises of Motorcars and transported the Vehicle back to Illinois.

6

(iii)    After Defendant Cho regained possession of the Vehicle, Defendant Navarro unlawfully added storage charges in violation of Florida Statute section 559.905.   Defendants Navarro then contacted Defendant Madelyn claiming that his company, Defendant Motorcars, held a mechanic's lien on the Vehicle.  Defendants Navarro and Motorcars then contracted with Defendant Madelyn to provide legal assistance in preparing the paperwork relating to foreclosure of the mechanic's lien.  In reality, the mechanic's lien was a legal and factual fiction because Defendant Navarro and Defendant Motorcars did not have possession of the Vehicle at the time they foreclosed of the mechanic's lien, and because a significant portion of the charges comprising the purported mechanic's lien, the storage charges, were never disclosed to Defendant Cho in the original estimate.

16.     Defendant Madelyn entered into a conspiracy with Defendants Navarro and Motorcars designed to create a second chain of title to the Vehicle in order to falsely reflect Defendant Motorcars as the owner of the Vehicle rather than the Vehicle's actual owner, Defendant Cho.   Pursuant to this conspiracy, Defendant Navarro had one of Defendant Motorcars' agents and/or employees, Lars Fischkelta ("Fischkelta"), execute a power of attorney, as the purported owner of the Vehicle, in favor of Defendant Madelyn and Defendant Madelyn's employee, Vicki Hurd ("Hurd").  Defendant Madelyn then had one of its other employees, Karen Sawyer, notarize the power of attorney.  At the time of executing the power of attorney, Defendant Madelyn knew or reasonably should have known that Defendant Motorcars and its agent employee, Fischkelta, were not the owners of the Vehicle.   Defendant Madelyn then

7

printed notices purporting to notify Defendant Cho, and the Vehicle's lien holder, Elgin Bank, an Illinois financial institution, of Defendant Motorcars' mechanic's lien, and that the Vehicle was to be sold at public auction. The notices were invalid.

    (a)    In addition to being invalid, among other deficiencies, Defendant Madelyn mailed the notices to addresses in Florida, instead of Illinois and failed to issue a notice to the co-owner of the Vehicle, Laurie Klein Cho. As a consequence, the Defendant Cho, Laurie Klein Cho, and Elgin Bank were unaware of Defendant's Navarro and Motorcars' intention to sell the Vehicle.

    (b)    In the alternative, although the notices were invalid, Defendant Cho received the notice and knew that the Vehicle was to be sold at public auction, but later failed to disclose such information to the buyer of the Vehicle in Texas.

17.    Upon information and belief, in furtherance of the conspiracy, Defendants Navarro, Motorcars, and Madelyn then purported to hold a public auction of the Vehicle at Defendant Madelyn's business location in Ft. Lauderdale, but in reality no actual auction occurred.   Instead, Defendant Motorcars pretended to purchase the Vehicle from Defendant Madelyn for the sum of $26,725.50.   Upon information and belief, the sale of the Vehicle to Defendant Motorcars was also invalid for several reasons, including, but not limited to:   (i) Defendant Motorcars did not have possession of the Vehicle at the time of the alleged creation of the mechanic's lien, or if it ever did, Defendant Motorcars did not retain possession of the Vehicle through the date of the sale, thus extinguishing any such lien; (ii) Defendant Madelyn and Defendant Motorcars failed to properly notify Defendant Cho and his spouse, Laurie Klein

Cho, of the alleged mechanic's lien held by Defendant Motorcars, or of the date, time and location of the alleged public auction; (iii) Defendant Motorcars and Defendant Madelyn failed to properly notify Elgin Bank of the date, time and location of the public auction of the Vehicle, (iv) the mechanic's lien, to the extent ever validly held by Defendant Motorcars, was extinguished when Defendant Motorcars failed to retain possession of the Vehicle through the date of the alleged sale, and (v) Defendant Madelyn never displayed the Vehicle for sale during the alleged auction so that the public could bid on it, or Defendants Navarro, Motorcars and Madelyn otherwise prevented the public from viewing the Vehicle and bidding on it during the purported public auction.

18.     Upon information and belief, in furtherance of the conspiracy, Defendant Madelyn, through its employee/agent, Vicki Hurd, then completed a false affidavit (the "Madelyn Sale Affidavit") relating the fictitious auction of the Vehicle.  In addition to being false, the Madelyn Sale Affidavit was invalid for several reasons, including but not limited to:  (i) it never listed Motorcars as the purchaser of the Vehicle at auction, and (ii) it was never verified by Defendant Motorcars as required by Florida law.  Instead, the Madelyn Sale Affidavit listed the purchaser as "c/o 3411 NW 9th Avenue Ft Lauderdale, Florida 33309".

19.     In furtherance of the conspiracy, Defendants Navarro and Motorcars, or in the alternative, Defendant Madelyn, on Defendants Navarro's and Motorcars' behalf, then supplied the notices, the Madelyn Sale Affidavit, and the falsified Motorcars invoice to the Florida DMV. In addition, Defendant Madelyn, on behalf of Motorcars, then completed an Application for Certificate of Title, containing a false odometer disclosure statement, representing that the Vehicle had 5,504 miles, which was then executed by Defendant Madelyn's employee/agents Hurd and Sawyer.  Defendants Navarro, Motorcars, and Madelyn provided the Madelyn Sale

Affidavit, auction ad compliance certificate, the falsified Motorcars invoice, and the false odometer information in order to convince the DMV to issue a new Florida title to the Vehicle (the "Florida Title").

20.     At the time of making such application to the DMV, Defendants Navarro, Motorcars, and Madelyn did not possess the Vehicle and as a consequence did not know the actual mileage of the Vehicle.  At the time of the application, the actual odometer reading of the Vehicle exceeded 13,500 miles.  At the time of completing the Application for Certificate of Title, Defendants Navarro, Motorcars, and Madelyn knew that the odometer information for the Vehicle contained in the Application for Certificate of Title was false, but they nonetheless conspired to provide the false odometer information to Florida DMV intending for the DMV to rely on the same.  The DMV relied upon the false representation regarding the odometer reading on the Vehicle, and as a consequence the Florida Title incorrectly stated that the mileage on the Vehicle was 5,504 miles.

21.     The Florida Title and Defendants Navarro and Motorcars' claim of ownership of the Vehicle, which resulted from the conspiracy between Defendants Navarro, Motorcars and Madelyn, are invalid for several reasons, including but not limited to:

(a)     After a mechanic's lien foreclosure sale, Florida law permits only the buyer at public auction to apply with the DMV for a transfer of title from the vehicle's owner to the auction buyer.  However, Defendant Motorcars did not apply for a transfer of title.  Instead, Defendant Motorcars applied for a new Florida Title and took no action to cancel, brand or obtain the surrender of the Illinois Title in connection with obtaining the Florida Title;

10

(b)     Defendants Navarro and Motorcars obtained the Florida Title without possessing a valid mechanic's lien;

(c)     Defendants Navarro and Motorcars obtained the Florida Title without Defendant Madelyn providing proper notice of the claimed mechanic's lien and public sale to the Vehicle's owners and lien holder;

(d)     Defendants Navarro and Motorcars obtained the Florida Title without Defendant Madelyn holding a lawful public auction of the Vehicle;

(e)     Defendants Navarro and Motorcars obtained the Florida Title without properly completing a certificate of compliance and without verifying or completing the requisite report of sale of the Vehicle in violation of Florida law;

(f)     Defendants Navarro and Motorcars failed to extinguish the Illinois Title, failed to obtain a lien stamp on or brand the Illinois Title, or otherwise place any cloud on the Illinois Title, such that the consuming public in other states would be unaware that Defendants initiated a second chain of title to the Vehicle in Florida, prior to the Vehicle's acquisition by Plaintiff;

(g)     Defendants Navarro and Motorcars did not possess the Vehicle at the time Defendant Motorcars purported to foreclose its mechanic's lien; and

(h)     Defendants Navarro, Motorcars and Madelyn submitted a false Certificate of Title Application, false information and false documentation regarding the mechanic's lien, the repairs, the auction, the sale, the owner of the Vehicle, and the Vehicle's odometer reading to DMV.

22.     Defendant Cho sold the Vehicle in Texas and surrendered the Illinois Title to the Texas Department of Motor Vehicles, which then issued a Texas title (the "Texas Title") for the Vehicle on or about November 24, 2009.  At the time Defendant Cho sold the Vehicle and tendered the Illinois Title to the Texas DMV either:

(a)     Defendant Cho did not know that Defendants Navarro and Motorcars were claiming a mechanic's lien on the Vehicle and Defendant Cho did not receive the notice printed by Defendants Madelyn, Motorcars or Navarro regarding the purported mechanic's lien or public auction.  As a result, Defendant Cho was unaware of the mechanic's lien and that a purported auction was ever held; or

(b)     In the alternative, Defendant Cho knew that Defendant Motorcars claimed a mechanic's lien on the Vehicle, that the auction had been purportedly held to foreclose the mechanic's lien, that that Defendants Navarro and Motorcars purchased the Vehicle at the purported auction, and claimed an ownership interest in the Vehicle, but Defendant Cho failed to disclose any of these facts to the Texas buyer or the Texas DMV when surrendering the Illinois Title.

23.     In or about July 2010, Momentum BMW received the Vehicle in trade.  At the time of receiving the Vehicle in trade, Momentum BMW was assigned the Texas Title to the Vehicle.  At the time the Texas Title was tendered and assigned to Momentum BMW, the Texas Title reflected that the Vehicle had no other owners and was free and clear of liens.

24.     The Florida Title to the Vehicle is invalid, null and void, and Defendants Motorcars, Navarro and Madelyn knew or should have known that Motorcars did not possess a

12

valid mechanic's lien on the Vehicle when they conspired to hold the private sale to Defendant Motorcars and thereafter obtain the invalid Florida Title.

25.    In December 2010, Defendant Navarro presented the invalid Florida Title to Texas law enforcement, represented to law enforcement that Defendant Motorcars possessed a mechanic's lien, purchased the Vehicle in a foreclosure sale, and that Defendant Cho has stolen the Vehicle from him.  These representations were false and known by Defendant Navarro to be false at the time they were made. Defendant Navarro made these misrepresentations intending for them to be relied upon. Texas law enforcement relied on Defendant Navarro's misrepresentations and unwittingly assisted Defendant Navarro in wrongfully obtaining possession of the Vehicle from Momentum BMW.

26.    Upon information and belief, Defendants Navarro and Motorcars, through one or more agents, transferred possession of the Vehicle to Defendant Cope, who, upon information and belief, holds the Vehicle at 1430 N.E. 137th Street, Miami, Florida 33161.

27.    As a direct and proximate result of Defendants' actions, Momentum BMW has been damaged in an amount exceeding $75,000.00, excluding attorney's fees and costs.

28.    Momentum BMW has retained the undersigned to represent it in this action and has agreed to pay the undersigned reasonable attorneys' fees for such representation.

29.    All conditions precedent to the bringing of this action have occurred or have been waived.

**COUNT I – DECLARATORY RELIEF**
**AS TO VALIDITY OF TITLE, OWNERSHIP AND REPLEVIN OF THE VEHICLE**

30.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31.    This is an action seeking declaratory relief pursuant to 22 U.S.C. § 2201.

13

32.     Plaintiff holds valid title, the Texas Title, to the Vehicle and Plaintiff is the only person or entity to hold a valid ownership interest in the Vehicle.  A true and correct copy of Plaintiff's Texas Title is attached hereto as *Exhibit B*."  The Texas Title emanates from an unbroken chain of transfers beginning with the Vehicle's Manufacturer's Statement of Origin through the subsequent transfers of title from the Vehicle's owners in New Jersey, Illinois, and Texas. The Texas Title is free and clear of all liens and encumbrances.  Plaintiff is an innocent purchaser for value and acquired the Vehicle without notice of the Florida Title or Defendant Motorcars' mechanic's lien claim and claim of ownership to the Vehicle.

33.     Defendants Navarro and Motorcars claim an ownership interest in the Vehicle and claim to hold title in the Vehicle by virtue of the issuance of the Florida Title.

34.     Defendant Motorcars, through Defendant Navarro and with the assistance of Defendant Madelyn conspired to wrongfully assert a mechanic's lien on the Vehicle, foreclose the invalid lien on the Vehicle, and to obtain the invalid Florida Title through the mechanic's lien foreclosure process.  In the alternative, such mechanic's lien was proper and enforceable against Defendant Cho and the Vehicle, and was properly foreclosed, in which event Defendant Cho had a duty to disclose Defendant Motorcars' interest in the Vehicle at the time of Defendant Cho's sale of the Vehicle and the surrender of the Illinois Title in Texas, and failed to disclose the same. In the alternative, Defendant Motorcars knew of the existence of the Illinois title held by Cho and, under the circumstances when creating a second chain of title in Florida, Defendant Motorcars and Navarro had a duty to brand the Illinois Title and/or the Texas Title with Defendant Motorcars' interest prior to the sale of the Vehicle to Plaintiff, and Defendant Motorcars failure to do so serves as a waiver of its interest, or Defendant Motorcars should be equitably estopped from asserting such interest.

14

35.     Upon information and belief, Defendant Cope has possession of the Vehicle and holds the same at the address listed above.  To the extent that Defendant Cope claims an interest in the Vehicle, such interest is inferior to that of Plaintiff.  Specifically, insofar as Defendant Cope received the Vehicle from Defendants Navarro and Motorcars, who stole the Vehicle from Plaintiff, Defendant Cope received no greater rights in the Vehicle than that of a thief.

36.     As a direct and proximate result of Defendants' overt acts and/or omissions, Plaintiff has been damaged and has been deprived of the possession of the Vehicle.

37.     To the best of Plaintiffs knowledge, information and belief, the value of the Vehicle is $105,139.00.

38.     Plaintiff is entitled to possession of the Vehicle as it is the sole legitimate owner of and title holder in and to the Vehicle.

39.     The Vehicle is wrongfully detained by Defendant Cope.

40.     Upon information and belief, Defendant Cope gained possession of the Vehicle from Defendants Navarro and Motorcars and/or one of their agents.

41.     The Vehicle has not been taken for any tax, assessment, or fine pursuant to law. The Vehicle has not been taken under an execution or attachment against Plaintiff's property.

42.     Because of the conflicting claims in and to the Vehicle and the conflicting Texas Title and Florida Title, there is a bona fide, actual and present controversy and need for declaration of the Parties' rights and a declaration regarding: (i) the existence and validity of the purported mechanic's lien, (ii) the propriety of the notices to the Vehicle's then owner Defendant Cho, Cho's spouse and Elgin Bank, (iii) the propriety of the notification as to the sale of the Vehicle (iv) the propriety of the publication relating to the purported public auction, (v) the propriety of the purported public auction; (vi) the propriety of the compliance certificate and

report of sale; (vii) Defendants' presentation of an application for new Florida Title rather than transfer of the existing Illinois Title, (viii) the propriety of Defendants' failure to seek surrender of the Illinois Title or to brand the title so that residents of other states were notified of Defendant Motorcars claim of ownership, and (ix) the degree of knowledge of Defendant Cho regarding Defendant Motorcars' claim to a mechanic's lien, and knowledge regarding the conflicting claim to ownership of the Vehicle at the time Defendant Cho sold the Vehicle in Texas.

43.     The judicial declarations sought above concern a present, ascertained or ascertainable state of facts and an immunity, power, privilege or right of Plaintiff which is dependent upon the facts or the law applicable to the facts.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order (i) adjudicating the rights to the Vehicle, (ii) the legitimacy of the Texas Title, (iii) the invalidity of the Florida Title, (iv) determining that Motorcars mechanic's lien on the Vehicle was invalid or ceased to be operative prior to the purported sale, (v) declaring the notice and subsequent public sale of the Vehicle to be invalid, (vi) determining Defendants Motorcars, Navarro, Madelyn and Cho's liability to Plaintiff, (vii) directing that Defendant Cope tender the Vehicle to Plaintiff, (viii) awarding Plaintiff damages against Defendants Navarro, Motorcars, Madelyn and/or Cho, and (ix) granting such other and further relief as the Court deems just and proper.

## COUNT II – CIVIL CONSPIRACY TO COMMIT CONVERSION

44.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 29, and paragraph 32 of this Complaint as though more fully set forth herein.

45.     This is an action for damages arising from the conspiracy to commit conversion of the Vehicle by Defendants Motorcars, Navarro and Madelyn (hereinafter "Conspiring Defendants").

46.     Plaintiff is the owner of the Vehicle and holder of valid title in and to the Vehicle.

47.     Defendants Motorcars, Navarro and Madelyn knowingly entered into a conspiracy.  The object of the conspiracy was to establish a second chain of title, the invalid Florida Title, and to use to Florida Title to convert the Vehicle to Defendant Navarro's and Defendant Motorcars' dominion and control.  Each of the Conspiring Defendants committed one or more overt acts and/or omissions in furtherance of the conspiracy.

48.     Once the invalid Florida Title was secured through the efforts of the conspiracy, Defendants Motorcars and Navarro then used the invalid Florida Title to wrongfully gain possession, dominion, and control of the Vehicle, taking the Vehicle from Plaintiff, and permanently, or for an indefinite period of time, depriving the same from Plaintiff in derogation of Plaintiff's ownership of and title in the Vehicle.

49.     Plaintiff has been damaged as a direct and proximate result of Defendants' conduct in furtherance of the conspiracy.

WHEREFORE, Plaintiff respectfully requests that this Court (i) enter judgment in its favor and against Defendants Navarro, Motorcars, and Madelyn, jointly and severally, for damages, (ii) awarding Plaintiff possession of the Vehicle, and (iii) granting such other and further relief as the Court deems just and proper.

## COUNT III
## CIVIL THEFT

50.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 29, and paragraph 32 of this Complaint as though more fully set forth herein.

51.     This is an action for civil theft pursuant to Florida Statute section 772.11, which provides that "any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a

cause of action for threefold the actual damages sustained and, in any such action . . . and reasonable attorney's fees and court costs.

52.     Florida Statute section 812.14 provides that "a person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently . . . deprive the other person of a right to the property or a benefit from the property . . . [or] appropriate the property to his or her own use or to the use of any person not entitled to the use of the property."

53.     Florida Statute section 812.017(2) provides that "[a]ny person who obtains merchandise, money, or any other thing of value through the use of a fraudulently obtained receipt or false receipt commits a misdemeanor of the first degree . . . ."

54.     Florida Statute section 812.155(1) provides that "[w]hoever, with the intent to defraud the owner or any person lawfully possessing any personal property or equipment, obtains the custody of such personal property or equipment by trick, deceit, or fraudulent or willful false representation shall be guilty of . . . a felony of the third degree . . . ."

55.     Plaintiff is the owner of the Vehicle and holder of valid title, the Texas Title, in and to the Vehicle.

56.     Defendants Motorcars and Navarro violated Florida Statute sections 812.017(2) and 812.155(1) by engaging in deceit, trickery, and willful false representations, and by knowingly and intentionally using one or more fraudulent receipts, including the Motorcars invoice, the notices of claim of lien, and the Madelyn Sale Affidavit, to obtain invalid Florida Title on the Vehicle so that Defendants Navarro and Motorcars could then exercise dominion and control over the Vehicle.

57.     Once they secured the invalid Florida Title, Defendants Motorcars and Navarro then violated Florida Statute section 812.014 and 812.155(1) by knowingly and intentionally obtaining custody of the Vehicle by trick, deceit, or fraudulent or willful false representations, including using the invalid Florida Title, falsified Motorcars invoice, Madelyn Sale Affidavit, and claim of lien notices in order to gain possession, dominion, and control of the Vehicle from Plaintiff.

58.     Defendant Motorcars' and Defendant Navarro's conduct in using the fraudulent receipts and invalid Florida Title to take possession of the Vehicle from Plaintiff was done with the intention of temporarily or permanently depriving Plaintiff of the Vehicle or a benefit therefrom and was in derogation of Plaintiff's ownership of and title in the Vehicle.

59.     Plaintiff has been damaged as a direct and proximate result of Defendants Navarro, Motorcars and Madelyn's conduct.

60.     Before filing the instant action, Plaintiff issued the statutory demand required by Florida Statute section 772.11(1). As of the date of filing the instant action, Defendants Navarro and Motorcars have failed to satisfy the demand.

61.     Pursuant to section 772.11(1), Plaintiff is entitled to treble the market value of the Vehicle from Defendants Navarro and Motorcars, plus recovery of Plaintiff's reasonable attorney's fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court (i) enter judgment in its favor and against Defendants Motorcars and Navarro, jointly and severally, for treble the value of the Vehicle, (ii) award Plaintiff its reasonable attorney's fees and costs pursuant to Florida Statute section 772.11, and (iii) grant such other and further relief as the Court deems just and proper.

## COUNT IV
## CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT

62.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 29, and paragraph 32 of this Complaint as though more fully set forth herein.

63.     This is an action for recovery under Florida's Civil Remedies for Criminal Practices Act, Florida Statute sections 772.101 *et. seq.*

64.     Subsections 20 and 22, of Florida statute section 772.102(1)(a), provide in relevant part that: "'Criminal activity' means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit any crime that is chargeable by indictment or information under the following provisions . . .  Chapter 812, relating to theft, robbery, and related crimes . . . [and] Chapter 817, relating to fraudulent practices, false pretenses, fraud generally, and credit card crimes."   Defendants Motorcars' and Navarro's conduct, as described in the General Allegations, constitutes violations of the following criminal code sections from Chapters 812 and 817 of Florida Statutes:

> (a)   Florida Statute section 812.14 provides that "a person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently . . . deprive the other person of a right to the property or a benefit from the property . . . [or] appropriate the property to his or her own use or to the use of any person not entitled to the use of the property."

> (b)   Florida Statute section 812.017(2) provides that "any person who obtains merchandise, money, or any other thing of value through the use of a fraudulently obtained receipt or false receipt commits a misdemeanor of the first degree."

20

(c)    Florida Statute section 812.155(1) provides that "[w]hoever, with the intent to defraud the owner or any person lawfully possessing any personal property or equipment, obtains the custody of such personal property or equipment by trick, deceit, or fraudulent or willful false representation shall be guilty of . . . a felony of the third degree . . . ."

(d)    Florida Statute section 817.52 provides "[w]hoever, with intent to defraud the owner or any person lawfully possessing any motor vehicle, obtains the custody of such motor vehicle by trick, deceit, or fraudulent or willful false representation shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Insofar as Defendants Motorcars and Navarro committed theft under 812.14, and obtained the Vehicle from Plaintiff through the use of a false invoice for the repairs to the Vehicle, and through trick, deceit, fraudulent and willful false representations, their conduct constitutes "criminal activity" pursuant to section 772.102(1)(a)(20).

65.    Florida Statute section 772.103 provides that it shall be unlawful for any person:

(2)    Through a pattern of criminal activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, . . . [and]

(3)    Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt, . . . [and]

(4)    To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

As described in the General Allegations, Defendant Motorcars' and Defendant Navarro's conduct exhibits a conspiracy and pattern of criminal activity or, at a minimum, the collection of an unlawful debt from Plaintiff in violation section 772.103.

66.     Section 772.104(1) provides that any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of s. 772.103 shall have a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs. Plaintiff has been damaged as a direct and proximate result of Defendants Navarro, Motorcars and Madelyn's conduct.

67.     Plaintiff has been damaged as a direct and proximate result of Defendants Navarro, Motorcars and Madelyn's conduct.

68.     Pursuant to section 772.104(1), Plaintiff is entitled to treble the market value of the Vehicle from Defendants Navarro and Motorcars, plus recovery of Plaintiff's reasonable attorney's fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court (i)  enter judgment in its favor and against Defendants Motorcars and Navarro, jointly and severally, for treble the value of the Vehicle, (ii) award Plaintiff its reasonable attorney's fees and costs pursuant to Florida Statute section 772.104(1), and (iii) grant such other and further relief as the Court deems just and proper.

## COUNT V
## UNFAIR DECEPTIVE TRADE PRACTICES

69.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 29, and paragraph 32 of this Complaint as though more fully set forth herein.

70.     This is an action for civil theft pursuant to Chapter 501, Florida Statutes, Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

71.     Defendants Navarro and Motorcars are engaged in "trade or commerce" as those terms are denied in Florida Statute section 501.203(8).

72.     Defendant Motorcars is a "dealer" as that term is defined in Florida Statute section 501.975(2).

73.     Florida Statute section 501.204(1) prohibits "unfair methods of competition, unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce".

74.     Defendant Navarro's and Defendant Motorcars' conduct as described in the General Allegations above constitute violations of 501.204(1).

75.     Florida statute section 501.976(3) provides that it is a violation of FDUTPA for a dealer to "represent the previous usage or status of a vehicle to be something that it was not, or make usage or status representations unless the dealer has correct information regarding the history of the vehicle to support the representations." Florida statute section 501.976(4) provides that it is a violation of FDUTPA for a dealer to "represent general condition of a vehicle unless known by the dealer to be true and supportable by material fact." Florida statute section 501.976(12) provides that it is a violation of FDUTPA for a dealer to "[a]lter or change the odometer mileage of a vehicle."

76.     Defendants Navarro's and Motorcars' conduct as set forth in the General Allegations constitute violations of Florida Statute sections 501.976(3)(4) and (12).

77.     Pursuant to Florida Statute sections 501.2105(1) and 501.211, Plaintiff is entitled to recovery of its damages, plus its reasonable attorney's fees and costs from Defendants Navarro and Motorcars.

WHEREFORE, Plaintiff respectfully requests that this Court (i) enter judgment in its favor and against Defendants Motorcars and Navarro, jointly and severally, for actual damages, (ii) award Plaintiff its reasonable attorney's fees and costs pursuant to Florida Statute sections 501.2105 and 501.211, and (iii) grant such other and further relief as the Court deems just and proper.

## COUNT VI
## VIOLATION OF FEDERAL ODOMETER ACT 49 U.S.C. § 32701 *et seq.*

78.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 29, and paragraph 32 of this Complaint as though more fully set forth herein.

79.     This is an action under the Federal Odometer Act, 49 U.S.C. § 32701 *et. seq.*

80.     Defendant Motorcars is a "dealer" as contemplated by United States Code Section 32702(2).

81.     Defendant Madelyn is an "auction company" as contemplated by United States Code Section 32702(1).

82.     United States Code Section 32705, and 49 C.F.R. §§ 580.5 and 580.13, require dealers and auction companies acting pursuant to a power of attorney to accurately disclose the "cumulative mileage registered on the odometer" or state that "the actual mileage is unknown". The Federal Odometer Act, Section 32705, and 49 C.F.R. §§ 580.5 and 580.13 also prohibit a dealer that acquires a motor vehicle for resale from accepting a written odometer disclosure unless it is complete, and prohibits dealers and auction companies from making false statements when making the odometer disclosure to state DMVs.  Finally Section 32705 and 49 C.F.R. §

24

580.9 require auction companies to maintain records relating to the actual odometer reading of the Vehicle on the date of sale of the Vehicle at auction. As set forth in the General Allegations above, Defendants Navarro, Motorcars and Madelyn violated these and other requirements of the Federal Odometer Act and its regulations.

83.    United States Code Section 32710(a) provides that "[a] person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $1,500, whichever is greater.

84.    Defendants Motorcars, Navarro and Madelyn, with intent to defraud, violated section 32705 of the United States Code as set forth in the General Allegations.

WHEREFORE, Plaintiff respectfully requests that this Court (i) enter judgment in its favor and against Defendants Motorcars and Navarro, jointly and severally, for three times Plaintiff's actual damages or $1,500, whichever is greater, (ii) award Plaintiff its reasonable attorney's fees and costs pursuant to 49 U.S.C. § 32710, and (iii) grant such other and further relief as the Court deems just and proper.

HINSHAW & CULBERTSON LLP


s/Charles G. Geitner
Charles G. Geitner, P.A.
Florida Bar No. 085170
cgeitner@hinshawlaw.com
Zachary A. Harrington
Florida Bar No. 044104
zharrington@hinshawlaw.com
100 South Ashley Drive
Suite 500
Tampa, FL 33602
Telephone: 813-276-1662
Facsimile: 813-276-1956
*Attorneys for Plaintiff, Momentum BMW*