UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CV-80591
HURLEY/HOPKINS

SONIC MOMENTUM B, L.P.
d/b/a MOMENTUM BMW,

    Plaintiff,

vs.

MOTORCARS OF DISTINCTION, INC.,
MOTORCARS OF DISTINCTION
MAINTENANCE, INC., PIERO
NAVARRO, MADELYN, INC.
d/b/a UNITED AMERICAN LIEN
AND RECOVERY CORP., et. al,

    Defendants.
_____/

## DEFENDANT UNITED AMERICAN'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Madelyn, Inc. d/b/a United American Lien and Recovery Corp., (hereinafter United American), hereby respectfully files this Motion for Summary Judgment against Plaintiff Sonic Momentum B, L.P., d/b/a Momentum BMW (hereinafter Momentum BMW) and respectfully requests that this Court grant this motion. The grounds for this motion are as follows.

### Introduction

This is a case in which the Plaintiff, Momentum BMW, primarily contests the validity of a Florida title to a 2003 Ferrari 360 Spider. Momentum BMW contends that a Texas title to the same vehicle is the valid title, not the Florida one, and that the vehicle was wrongfully taken from Momentum BMW by Defendant Piero Navarro. Each of the three counts that Momentum BMW has brought against Defendant United American Lien depends in large measure on

Momentum BMW's claim that the Florida title is invalid. United American Lien contends that the Florida title is valid and, even assuming it is not, United American has no liability to Momentum BMW whatsoever under any of the claims alleged in this case. As this motion will show, Momentum BMW has no standing to bring these claims as it transferred its alleged interest in the vehicle to a sister corporation who is not a named plaintiff. In addition, the validity of the Florida title and ownership of the vehicle was decided in another court proceeding against Momentum BMW's sister corporation that holds the Texas title. Accordingly, Momentum BMW's claims fail as a matter of law.

With respect to Momentum BMW's claim against United American Lien for violating the Federal Odometer Disclosure Act, certain key facts are undisputed: (1) the odometer on the Ferrari was never tampered with or altered; (2) the Odometer Disclosure incorrectly lists the mileage of the vehicle at 5,504 miles when the correct mileage was 15,504; (3) Momentum BMW examined the Ferrari's odometer when it accepted the vehicle in a trade in Texas and knew that the mileage was 21,480 miles at that time; (4) Momentum BMW did not know that Odometer Disclosure executed in Florida two years earlier mistakenly reported the mileage to be 5,504; (5) none of the information contained on any of the documents prepared in Florida and utilized to obtain the Florida title affected Momentum BMW's decision in any way to accepted the Ferrari in a trade or to pay $68,000 for the vehicle; and (6) Momentum BMW did not pay even one penny more for the Ferrari based on a belief that it was a lower-mileage vehicle than it was because the odometer reading on the vehicle was correct. In short, Momentum BMW has failed to develop any evidence that American United Lien had any intent to deceive Momentum BMW with respect to the vehicle's mileage by incorrectly documenting the vehicle's mileage to

be 5,504 when it was actually 15,504. Thus, Momentum BMW's odometer claim also fails as a matter of law.

Lastly, with respect to Momentum BMW's conspiracy to commit conversion claim, there is no evidence to support the theory that for a $400 fee to process the lien documents United American participated in some sort of agreement in May of 2009 to deprive Momentum BMW of the Ferrari in December of 2010. At the time that United American processed the lien documents and Florida title, Momentum BMW was an unknown third party ultimately 5 links down the chain in the possession of the Ferrari. Moreover, as required by Florida law, United American notified both the owner of the vehicle, Gustan Cho, and the lien holder, Elgin Bank, by certified mail that the mechanic's lien was to be foreclosed upon at the auction held in August of 2009. Thus, there was no agreement to conspire against the only rightful owner and lien holder of the vehicle to wrongfully convert it from them. The claim of conspiracy to commit conversion is baseless.

## MEMORANDUM OF LAW

### Standard of Review

Pursuant to Rule 56(c), Fed.R.Civ.P., summary judgment is authorized when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). With regard to the elements essential to the non-moving party's case, and upon which that party will bear the burden of proof at trial, the United States Supreme Court has stated that "failure to show sufficient evidence of any essential

element is fatal to the claim and the court should grant summary judgment." *Celotex Com. v. Catrett*, 477 U.S. 317, 322-23 (1986). Here, Momentum BMW's claims against United American fail for several reasons.

### A. Momentum BMW lacks standing to sue.

It is an elemental principal of civil law that a litigant may not bring a cause of action before the court unless such litigant has standing to sue. *Allen v. Wright*, 468 U.S. 737, 750–51 (1984). The Supreme Court has outlined three separate and distinct elements that must be satisfied in order for a plaintiff to establish standing. *Fed. Deposit Ins. Corp. v. Morely*, 867 F.2d 1381, 1386 (11th Cir. 1989) (citing *Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982)). First, the plaintiff must demonstrate that they have suffered an actual injury. *Id.* Second, the plaintiff's injury must be caused by the defendant's conduct. *Id.* Finally, the plaintiff "must demonstrate that a favorable decision will likely redress the injury." *Id.*

A similarly elementary principal of law is that a third party may generally not stand in the shoes of a proper plaintiff. *Warth v. Seldin,* 422 U.S. 490, 499 (1975). "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll.*, 454 U.S. at 474 (quoting *Warth*, 422 U.S. at 499). Courts look to two factual elements when determining whether to grant standing to a third party. *Singleton v. Wulff*, 428 U.S. 106, 116 (1976). First, a court shall only allow third party standing when the third parties' rights are inextricably bound to the affected rights of the proper plaintiff. *Id.* Second, the court must look at the ability of the proper plaintiff to assert their own legal rights. *Id.* When the proper plaintiff is fully able to litigate his own claim, the court should not allow a third party to stand in the shoes of the proper plaintiff. *Id.*

Finally, it is important to note that the third party's absence from court tends to show that the third party either has no interest at stake or the interest is actually not important to the third party. *See id* at 113–14.

Application of these principals to this case clearly demonstrates that Momentum BMW has no standing to litigate this claim, and also has no argument that it has valid third party standing to sue on behalf of Momentum Porsche. In this case, Plaintiff Momentum BMW is attempting to assert the potential legal claims of its sister corporation Momentum Porsche, even though Momentum Porsche has not been named as a plaintiff. It is undisputed that Plaintiff Momentum BMW accepted the Ferrari as a trade in from Mr. Garza. Mr. Garza transferred title of the Ferrari to Momentum BMW in that trade. It is further undisputed that Momentum BMW made a business decision to transfer possession *and title* of the Ferrari to its sister corporation Momentum Porsche because Momentum Porsche was better suited to resell the Ferrari. The Texas title was never transferred back to Momentum BMW; it presently reflects that Momentum Porsche is owner of the Ferrari. Thus, Momentum BMW has no present legal interest in the Ferrari at issue. It simply has no standing to bring this action in which it claims ownership of the Ferrari. Momentum BMW lacks standing to seek a declaration that the Florida title is invalid; lacks standing to claim that United American conspired to convert a vehicle Momentum BMW does not have title to in Texas; and lacks standing to assert a Federal odometer claim to a vehicle purportedly owned by its sister corporation. Because Momentum BMW lacks standing to bring this action, summary final judgment should be entered in United American's favor as to each of the three counts brought against it by Momentum BMW.

**B.      Judgment should be entered in United American's favor on the conspiracy to commit conversion claim where there was no agreement to conspire.**

In Count II of its complaint, Momentum BMW sues United American for civil conspiracy, alleging that "Defendant Motorcars, Navarro and Madelyn (United American) knowingly entered into a conspiracy . . . to establish a second chain of title, the invalid Florida title, and to use the Florida title to convert the vehicle to Defendant Navarro's and Defendant Motorcars' dominion and control." [DE 1, p. 17]. With respect to United American, Momentum BMW has failed to come forward with any evidence sufficient to show that there was an understanding or agreement of any kind between United American and Mr. Navarro to deprive Momentum BMW of a vehicle it now claims to own. Allegations of wrongdoing ultimately fail where there is no evidence to support them.

Under Florida law, "[a] civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)*. "The core of a conspiracy claim is an agreement between the parties." *Leitgeb v. Kelley*, 510 F.Supp. 2d 1227, 1236 (11th Cir. 2007). An "[a]greement is a necessary element of the crime of conspiracy, which is defined as an express or implied agreement of two or more persons to engage in a criminal or unlawful act." *Witmer v. Dep't of Bus. & Prof'l Regulation*, 631 So. 2d 338, 342 (Fla. 4th DCA 1994). Moreover, "[a]n action for civil conspiracy ordinarily requires proof of an agreement between two or more people to achieve an illegal objective, an overt act in furtherance of that illegal objective, and a resulting injury to the plaintiff." *Pack v. Unifund CCR Partners, G.P.*, 2008 WL 686800 (citing *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla.*, Inc., 140 F.3d 898, 912 (11th Cir.1998). A motion for summary judgment will be granted, as to a conspiracy to commit conversion claim, when there is no evidence that the parties entered into an

6

agreement to convert the property in question. *Pezold Air Charters v. Phoenix Corp.,* 192 F.R.D. 721 (M.D. Fla. 2000).

In *Pezold Air Charters v. Phoenix Corp.*, the District Court held that the defendant did not conspire to commit conversion because there was no evidence in the record that showed that the defendant knew about or participated in the unlawful activity that allegedly took place. 192 F.R.D. 721, 726 (Fla. M.D. 2000). The District Court explained that "[a]bsent evidence that [defendant] knew or participated in some wrongdoing, the mere contractual relationship between [the parties] is not enough to tie [the defendant] to the alleged conspiracy. *Id.* at 727.

In this case, the record evidence fails to establish that an agreement of any kind was ever entered into between United American and Mr. Navarro to deprive Momentum BMW of a vehicle that it would not gain possession of until a year later and after the vehicle had changed hands four times. The factual basis of Momentum BMW's conspiracy claim against United American is very unclear. Momentum BMW is apparently contending that United American conspired with Mr. Navarro to convert the Ferrari because it processed the paperwork necessary for Mr. Navarro to foreclose on the mechanic's lien and to obtain a Florida title to the vehicle when it was not redeemed by the owner or lie holder at the auction or purchased by a third party. As in *Pezold,* the contractual relationship between United American and Motorcars of Distinction does not give rise to a conspiracy claim or even an inference that United American engaged in any wrongdoing whatsoever. The fact that United American was paid approximately $400 by Motorcars to process the lien, conduct the auction and obtain the Florida title does not equate to evidence of an agreement between them to convert the vehicle from Momentum BMW.

Momentum BMW claims that the lien was invalid, thereby invalidating the Florida title obtained as a result of the foreclosure of that lien. However, even assuming that is true (which

7

United American disputes), the mere invalidity of the lien and the title does not give rise to an inference that United American and Mr. Navarro agreed to conspire to convert the Ferrari from Momentum BMW. United American has no obligation, contractual or legal, to determine the validity of a customer's lien before processing it. United American is being retained solely to process the paperwork necessary to conduct the auction and obtain the title if the vehicle is not redeemed by the owner or lien holder at the auction or by a third party. The validity, or lack thereof, of the lien is determined through a court proceeding.

Pursuant to Florida law, the owner of the vehicle, in this case Gustan Cho, and any lien holder, in this case Elgin Bank, must receive certified letters notifying them of the scheduled auction and their rights to redeem the vehicle or contest the lien. The owner or lien holder have the right to petition the court to determine the validity of the lien, which to automatically halts the sale pending litigation. Any dispute regarding the validity of the lien is a dispute between the mechanic shop, in this case Motorcars of Distinction, and the owner; United American has no interest in that dispute.

In this case, it is undisputed that Mr. Cho and Elgin Bank received certified notice of the auction. They took no steps to redeem the vehicle or to automatically stop the auction by filing a petition with the court as they had every right to do. Thus, Momentum BMW's attempt to claim that United American either negligently or intentionally processed an invalid lien in furtherance of a conspiracy fails to provide any legal basis for its position. It does not prove the existence of any agreement to conspire nor could it under any circumstance in this case where the owner and lien holder had the right to contest the validity of the lien at that time. In sum, the validity or lack thereof of lien does not constitute evidence of a conspiracy in this case.

Because the record evidence fails to show that United American and Piero Navarro, on behalf of Motorcars of Distinction, entered into an agreement to deprive Momentum BMW of the Ferrari, Momentum BMW's conspiracy to commit conversion claim fails as a matter of law. United American is therefore entitled to a summary final judgment in its favor on this claim.

**C. Defendant United American has no liability under the Federal Odometer Act to a remote purchaser such as Momentum BMW who cannot demonstrate fraudulent intent.**

The Federal Odometer Act was passed by Congress in 1972 in order to provide protection to purchasers of used or purportedly new vehicles. 49 U.S.C. § 32701 (a)–(b) (2011). Congress intended to protect purchasers from odometer tampering because buyers "rely heavily on the odometer reading as an index of the conditions and value of [a] vehicle" and because "buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle." *Id.* Congress expressly identified the purposes of the Odometer Act to be "(1) to prohibit tampering with motor vehicle odometers; and (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." *Id.* Congress outlined the private cause of action under the Odometer Act in 49 U.S.C. § 32710 as follows:

    a. Violation and Amount of Damages. – A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $1,500, whichever is greater.

    b. Civil Actions. A person may bring a civil action to enforce a claim under this section in an appropriate United States district court or in another court of competent jurisdiction. The action must be brought not later than 2 years after the claim accrues. The court shall award costs and a reasonable attorney's fee to the person when a judgment is entered for that person.

Numerous federal courts have interpreted the Federal Odometer Act to require two distinct and specific elements in order for the cause of action to be sustainable by a private party such as Momentum BMW. First a plaintiff must prove that a violation of the Odometer Act

9

occurred, and second, the plaintiff must prove by a preponderance of the evidence that a defendant acted with intent to defraud the particular plaintiff. *Bodine v. Graco, Inc.*, 533 F.3d 1145 (9th Cir. 2008) (citing *Owens v. Samkle Auto., Inc.*, 425 F.3d 1318 (11th Cir. 2005); *Huryta v. Diers Motor Co. of Grand Island Neb.*, 426 F.Supp. 1176, 1178 (Dist. Ct. Neb. 1977) ("[P]laintiffs must show by a preponderance of the evidence, as a prerequisite to the recovery of damages that [the defendant] violated the section 'with intent to defraud.'").

Courts have easily held that a defendant acted with the requisite intent to defraud a plaintiff when the defendant manipulated, altered or tampered with the vehicle's odometer. For example in *Mayline Enterp., Inc. v. Milea Truck Sales Corp.,* the plaintiff purchased a truck from the defendant seller. 641 F. Supp. 2d 304, 308 (S.D. NY 2009). The seller sold the truck to the plaintiff with 75,769 miles showing on the odometer, but in reality the truck had traveled over 100,000 miles more; or a total of 176,167 miles. *Id.* The court concluded that an inference existed that the defendant intended to defraud the plaintiff because of the odometer tampering. *Id.*

The Eleventh Circuit Court of Appeals has also held that a defendant acts with intent to defraud when a seller defendant conceals the true history of a vehicle from the plaintiff buyer. *Owens v. Samkle Automotive Inc.,* 425 F.3d 1318, 1324–25 (11th Cir. 2005). In *Owens*, the defendant seller sold a vehicle to the plaintiff, but failed to disclose, and actually concealed, the fact that the vehicle had previously been used as a Hertz rental vehicle. *Id.* at 1320. The Eleventh Circuit Court held that these facts were sufficient to demonstrate that the dealer intended to defraud the purchaser within the meaning of the Federal Odometer Act. *Id.* at 1324–25.

Other courts have also found that a defendant seller acted with intent to defraud within the meaning of the Odometer Act when the mileage shown on a vehicle's odometer was less than the amount reflected in the title documentation, because this discrepancy tends to reflect that an odometer has been tampered with by the seller. For example, in *Coleman v. Lazy Days RV Center, Inc.,* the plaintiff buyer purchased a recreational vehicle from the defendant seller. 2006 WL 889736 *1 (M.D. Fla. Mar. 31, 2006). The defendant's title paperwork reflected that the RV had been driven for 66,069 miles; yet, further investigation by the plaintiff revealed that the previous owners of the particular RV had a reported an actual odometer reading of 82,000 miles nearly ten years prior to the sale of the RV to the plaintiff. *Id.* In other words, the facts showed that the odometer showed significantly less miles than were actually on the RV. *Id.* As a result, the court refused to dismiss the plaintiff's claim.

It is important to note that none of the aforementioned factual situations are present in the case at bar. In fact, it is undisputed that the Ferrari's odometer has not been tampered with or altered in any way. This is not a case in which the Plaintiff claims that the odometer had been altered when it purchased the vehicle. Furthermore, it is undisputed that the Ferrari's accident or usage history was never misrepresented to Momentum BMW as occurred in *Owens*. United American was not even the transferor of the vehicle to Momentum BMW, or anyone for that matter; instead, the vehicle had passed between four other purported owners before Momentum BMW accepted it in a trade from Mr. Garza. Since United American was not the transferor, it has no liability to Momentum BMW under the Act. *See Owens* (which discusses at length the necessity that a purchaser be provided accurate information on the title *by the seller* regarding the vehicle's mileage).

11

The only thing that Momentum BMW attempts to do in this case is create the illogical inference that United American Lien *intended to defraud Momentum BMW* by mistakenly writing a lower mileage amount on the odometer disclosure issued in Florida than what the vehicle's odometer digitally indicated.[1] In other words, the Ferrari's odometer showed the higher actual mileage figure when Momentum BMW purchased the vehicle in Texas from Mr. Garza based on a Texas title. The inference that United American could somehow defraud Momentum BMW, or anyone for that matter, by writing a lower mileage figure on the odometer disclosure than the actual higher mileage figure accurately reflected on the vehicle's odometer is not only illogical, but also contrary to the expressly stated reasoning of Congress when it enacted liability for odometer fraud. As Congress stated purchasers "rely heavily on the odometer reading as an index of the conditions and value of [a] vehicle" and here the Ferrari's odometer figure was accurate when Momentum BMW accepted it in a trade from Mr. Garza.

Importantly, at that time, Momentum BMW did not know about the Florida title, much less had it seen or relied on in any way the disclosure statement United American executed which showed the lower mileage figure. Momentum BMW purchased the Ferrari and determined the price it would pay for it *based on the vehicle's odometer reading at that time **which was accurate*** and the Texas title presented by Mr. Garza. There is simply no fraud under the Act whatsoever, particularly with respect to the Florida disclosure statement which Momentum BMW never had in its possession or even knew existed when it determined the vehicle's value and bought it.

---

[1] United American copied the mileage figure it noted on the disclosure statement from the invoice prepared by Motorcars of Distinction. The invoice contained a typographical error. It noted that the Ferrari had 5,504 miles on it when it was actually 15,504 miles.

As the *Hanley Dawson Cadillac* court held, "mere negligence cannot be the basis of civil liability under the Odometer Act." *Diersen v. Chicago Car Exchange*, 110 F.3d 481, 488 (7th Cir. 1997) (quoting *Jones v. Hanley Dawson Cadillac*, 848 F.2d 803, 806 (7th Cir. 1988)). At most, United American Lien was negligent when it copied the wrong mileage figure on the Ferrari's odometer disclosure; however, that misstep does not equate to intent to defraud anyone, much less intent to defraud Momentum BMW who claims it had no knowledge that a Florida title existed and was at least the fourth purchaser of the vehicle subsequent to the issuance of the Florida title. Multiple courts have agreed that such mere negligence will not suffice to hold a defendant liable under the Act. *See Huson v. General Motors Acceptance Corp.*, 108 F.3d 172, 173 (8th Cir. 1997); *Suiter v. Mitchell Motor Coach Sales, Inc.,* 151 F.3d 1275, 1284 (10th Cir. 1998); *Diersen*, 110 F.3d at 488.

The record evidence in this case does not show an intent to defraud on United American's part. It was not the transferor of the Ferrari to Momentum BMW or anyone else. The vehicle's odometer reflected its accurate mileage at the time Momentum BMW purchased it, and Momentum cannot claim that it was defrauded by an incorrect mileage notation on a document that was never in its possession. This is not a case where Momentum BMW purchased a Ferrari which it believed had only 5,504 miles and paid more for the vehicle as a result. Momentum BMW knew the vehicle's mileage was 21,480 at the time of its purchase and paid an amount for it that was proper given that mileage history. Given the absence of fraud in this case, summary final judgment should be granted in United American's favor on this claim.

**D.      Collateral estoppel bars the claims brought in this action**

**The Texas case determined ownership and possession of the Ferrari**

Momentum BMW's attempt to litigate the issue of title to the Ferrari is barred by collateral estoppel. "Collateral estoppel, i.e., issue preclusion, refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1328 (11th Cir. 2003). Essentially, a court will give preclusive effect to a judgment or order entered by another court so long as two conditions are met, "(1) the courts of the state from which the judgment emerged would do so themselves; and (2) the litigants had a full and fair opportunity to litigate their claims and the prior state proceedings otherwise satisfied applicable requirements of due process." *Id.* at 1329 (citing *Shields v. Bellsouth Advert. & Publ'g Co., Inc.*, 228 F.3d 1284, 1288 (11th Cir. 2000). To be sure, "under Florida law, collateral estoppel applies if (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction." *Id.*

In this matter, collateral estoppel applies based on the legal proceeding which took place in Texas in which the court determined that as between Piero Navarro and Momentum Porsche, Piero Navarro owned the Ferrari and right to its possession. This issue was determined by a court in Texas with competent jurisdiction to decide the issue since the Ferrari had been impounded by the police based on this very claim of disputed ownership. Mr. Navarro claimed he owned the vehicle pursuant to his Florida title and Momentum Porsche claimed it owned the vehicle. The Texas court resolved the issue in Mr. Navarro's favor and Momentum Porsche did not appeal that ruling. This presents a classic application of collateral estoppel.

14

There is no question but that the Texas court had competent jurisdiction to decide ownership and possession of the Ferrari. In *Allstate Ins. Co. v. Troy's Auto Parts*, the Texas Municipal Court held a hearing in order to determine who the rightful owner of a 1991 Acura NSX was. The municipal court granted possession to defendant and plaintiff appealed. The Texas Court of Appeal held that "Article 47.01a of the Texas Code of Criminal Procedure authorizes the municipal court to hold a hearing 'to determine the right to possession of the property'" 2001 WL 840613 (July 26, 2001 Tex.). The plain language of Article 47.04 *"allows the court to determine title as well as the right to possession." Id.* ("art. 47.04 provides the court with the power to direct the property be restored to the owner"); *see* TEX.CODE CRIM. PROC. ANN. Art. 47.04. The court further explained that "the right to possession without legal ownership would render the possession useless: as soon as the court awarded possession to one party, the other could assert a claim of title and seek recovery. *In order to be entitled to possession of a vehicle, a party must establish they are the title owner." Allstate Ins. Co.*, 2001 WL 840613.

As in *Allstate*, the Texas municipal court was called upon to decide who the legal owner of the Ferrari was. Momentum Porsche, Momentum BMW's sister corporation, was a party to that action and presented its claim of ownership to the Texas court. The Texas court found that the Florida title was valid and that ownership and possession belonged to Mr. Navarro. Accordingly, the primary issue underlying each of the three claims brought in this action against United American, i.e., valid title to the Ferrari, has already been decided unfavorably to Momentum BMW. Since the Florida title is valid, each of the claims brought against United American fail as a matter of law. Summary final judgment should be entered in United American's favor.

CASE NO. 11-CV-80591

## Conclusion

WHEREFORE Madelyn, Inc. d/b/a United American Lien and Recovery Corp., hereby respectfully requests that this Court enter an order granting this Motion for Summary Judgment against Sonic Momentum B, L.P., d/b/a Momentum BMW.

Respectfully submitted,

**BOLDT LAW FIRM**
215 S. 21st Avenue
Hollywood, Florida 33020
Telephone: (954) 921-2225
Facsimile: (954) 921-2232

By: /s/ Kimberly L. Boldt_____
    KIMBERLY L. BOLDT
    Florida Bar No. 957399

**BUCHALTER HOFFMAN AND DORCHAK**
1075 N.E. 125th Street, Suite 202
North Miami, Florida 33161
Telephone: (305) 891-0211

By: /s/ Kenneth J. Dorchak_____
    KENNETH J. DORCHARK
    Florida Bar No. 912689

Attorneys for Defendant Madelyn, Inc.

CASE NO. 11-CV-80591

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2012, I electronically filed the foregoing document with the Clerk of the Court using *CM/ECF*. I also certify that the foregoing document is being served this day on all counsel of record identified on the following Service List in the manner specified via transmission of Notices of Electronic Filing generated by *CM/ECF*.

By: /s/ Kimberly L. Boldt

CASE NO. 11-CV-80591

## SERVICE LIST

### SONIC MOMENTUM B, LP. v. MOTORCARS OF DISTINCTION, INC., MOTORCARS OF DISTINCTION MAINTENANCE, INC., PIERO NAVARRO, MADELYN, INC. et al

### CASE NO.: ll-CV-80591- HURLEY/HOPKINS

### United States District Court, Southern District of Florida

Charles G. Geitner, Esq.
cgeitiner@hinshawlaw.com
Hinshaw & Culbertson LLP
100 South Ashley Drive, Suite 500
Tampa, FL 33602
Telephone: 813-276-1662
Facsimile: 813-276-1956
Attorney for Momentum BMW

Zachary A. Harrington, Esq.
zhanington@hinshawlaw.com
Hinshaw & Culbertson LLP
100 South Ashley Drive, Suite 500
Tampa, FL 33602
Telephone: 813-276-1662
Facsimile: 813-276-1956
Attorney for Momentum BMW

Jerome W. Schechter, Esq.
jrspa@bellsouth.net
1995 E. Oakland Park Blvd., Suite 210
Ft. Lauderdale, FL 33306
Telephone: 954-764-7600
Facsimile: 954-763-4840
Attorney for Defendant COPE

Anthony S. Adelson, Esq.
anthony@adelsonlawfirm.com
1995 E. Oakland Park Blvd., Suite 210
Ft. Lauderdale, FL 33306
Telephone: 954-764-7600
Facsimile: 954-763-4840
Attorney for Defendant COPE